IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JAMES K. HESCH,

    Plaintiff,

                                                                      Civil No. 05-358 WJ/LFG

FRANK H. GREGG, II, et al.,

    Defendants.

## MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION AS TO THE ZIATEK JETSTREAM DIGITIZING SOFTWARE

THIS MATTER comes before the Court *sua sponte* and on Plaintiff's Motion for Preliminary Injunction and/or for Permanent Injunction, filed June 21, 2005 **(Doc. 9)**. For the reasons stated below, the Court finds that Plaintiff is entitled to injunctive relief concerning the in the matter regarding Plaintiff's request for injunctive relief concerning the Ziatek Jetstream digitizing software, but that the issuance of the injunction is deferred until the Court rules on the issue of a Rule 65(c) security bond.

### Background

This is a copyright infringement case in which Plaintiff alleges that Defendants reproduced, distributed and displayed various computer software programs without authorization or license by Plaintiff, who is allegedly the registered copyright owner.

On July 6, 2005, following a hearing, the Court entered an Order awarded Plaintiff's request for a preliminary injunction with regard to the software packages Ziatek Crystal, Ziatek Rock-It!, Ziatek Carp-It!, Ziatek Tile-It; Ziatek e-Takeoff!, Ziatek MeasurePro and Ziatek Power

Takeoff! (collectively referred to in the Preliminary Injunction Order as the "Enjoined Programs").
Doc. 19 at 1. However, the Court took under advisement its decision regarding Plaintiff's request
for injunctive relief concerning the Ziatek Jetstream computer software. Doc. 19 at 3.

Defendants do not dispute that Plaintiff authored the Jetstream software, but contends that
both parties are co-owners of the Jetstream copyright. Defendants further contend that the
Jetstream software belongs to BVH Gregg Manufacturing LLC ("Gregg, LLC"), a company
formed by the parties in 2002 for the sole purpose of manufacturing and selling three-arm
"stealth" digitizer units which were bundled with the Ziatek Jetstream digitizing software.[1]

## Discussion

In deciding whether Plaintiff is entitled to injunctive relief on his copyright infringement
claims, the Court must first address the issue of who owns the copyright to the Ziatek Jetstream
digitizing software ("Jetstream software"). If there is not a likelihood of success for the Plaintiff
on this question, then Plaintiff's likelihood of success on the ultimate issues of copyright
infringement would decrease as well.

**I.    Legal Standard**

In order to receive a preliminary injunction, a plaintiff must establish the following four
factors:(1) a substantial likelihood of success on the merits of the case; (2) irreparable injury to
the movant if the preliminary injunction is denied; (3) the threatened injury to the movant
outweighs the injury to the other party under the preliminary injunction; and (4) the injunction is

---

[1] Based on the parties' briefs and oral descriptions at the hearing, the Jetstream software
was designed to use a water jet apparatus to allow mass cutting of gaskets from a template. The
"two-armed stealth" is the hardware part of the bundled package, comprised of a hinged arm-like
fixed shoulder and a moving "elbow." The "three-armed stealth" that was developed later was a
portable three-arm machine.

not adverse to the public interest. Valley Community vs. Mineta, 373 F.3d 1078, 1083 (10th Cir. 2004) (citing Kikumura v. Hurley, 242 F.3d 950, 955 (10th Cir. 2001)). Generally, if a plaintiff establishes that the latter three factors "tip strongly" in his or her favor, the likelihood of success inquiry is modified somewhat, and the plaintiff may establish likelihood of success "by showing that questions going to the merits are so serious, substantial, difficult, and doubtful as to make the issue ripe for litigation and deserving of more deliberate investigation." Valley Community vs. Mineta, 373 F.3d 1078, 1083 (10th Cir. 2004) (citation omitted).

Since 1999, Plaintiff and Defendant Gregg had teamed their respective efforts in the creation, marketing and sale of computer software which is used to digitize and manipulate data used in the subcontractor construction trades. Plaintiff Hesch is sole owner of Ziatek, Inc. ("Ziatek"), and Defendant Gregg is sole owner of BVH Gregg, Inc. ("BVH Gregg, Inc."), and managing member and president of BVH Gregg Manufacturing LLC ("BVH Gregg, LLC").

Sometime in 2000, parties entered into an agreement which was put into writing for a bank loan in 2001. This was a joint venture agreement for the development of a two-arm stealth digitizer unit which gave Ziatek.and BVH Gregg Inc. a 50% share in the gross revenues after expenses, which would also be equally shared. Pltff's Ex. 18 (Gregg Affidavit), Attachment B ("Agreement of Ownership").[2] Later, when the portable three-arm stealth unit was designed in 2002, BVH Gregg, LLC was formed to fund the project. Under the agreement corresponding to this venture, Plaintiff Hesch and Defendant Gregg each owned 35% of the membership rights to Gregg LLC, with two other partners owning the remaining 30%. Ex. 18 at 2, ¶¶ 9, 10, Attachment C ( "BVH Gregg, LLC Membership Agreement).

---

[2] These exhibits were presented to the Court at the June 30, 2005 hearing.

## II. Relevant Documents and Materials

The relevant documents are the Agreement of Ownership made by the parties in 2000, and the BVH Gregg, LLC Membership Agreement from 2002. The language in Attachment B reads in part:

> Unreimubursed investment
> Ziatek, Inc. will *contribute* the following for the start-up of this venture:
> "   *Intellectual property* in the form of the conceptual design of the *digitizer*. Any rights to *patents or copyrights on the specific design* shall *belong to both parties in equal parts*.
> "   JetStream digitizing *software* in its present state and including the development of additional features deemed necessary by both parties for the success of the product.
> "   Management of the Research & Development effort.
> "   Management of the manufacturing process.

(emphasis added). The language in Attachment C reads in part:

> Both Gregg Inc. and Ziatek "equally own 100% of the Stealth CMS 8400 digitizer and its technology." Gregg and Ziatek "*will furnish the previously owned proprietary technology software* to be included in that version of ownership to BVH Gregg Manufacturing LLC. . . ."

(emphasis added). The question is whether there was a transfer of the copyright to the Jetstream software with the 2000 joint venture, and did that flow into the formation of Gregg LLC membership agreement?

## III. Analysis

Under 17 U.S.C. § 204(a), a transfer of copyright ownership, other than by operation of law, "is not valid unless an instrument of conveyance, or a note or memorandum of the transfer, is in writing and signed by the owner of the rights conveyed or such owner's duly authorized agent"; Arthur Rutenberg Homes, Inc. v. Drew Homes, Inc., 29 F.3d 1529, 1531 (11th Cir. 1994); Saxon v. Blann, 968 F.2d 676, 681 (8th Cir. 1992) (To transfer ownership of a copyright, the parties

must state in writing that they intend to transfer a copyright).  Thus, it appears that the resolution of the question of copyright transfer is essentially one of contract interpretation.  It is undisputed that both documents (attachments B and C to Plaintiff's Exhibit 18) were drafted by Defendant Gregg, which means that any ambiguities in these documents are construed against him as the drafter.  RTC v. Ocotillo W. Joint Venture, 840 F.Supp. 1463, 1482 (D.N.M. 1993).

Plaintiff contends that the software was only licensed to BVH Gregg, LLC.  His position is that any transfer of rights as to "patents or copyrights" referenced in the first bullet of Attachment B applies only to intellectual property "in the form of the conceptual design of the digitizer" – not the software, which is set off separately in the second bullet.  Under the second bullet, Hesch would *provide* the software, but there is no mention of transfer of ownership of the intellectual property regarding the software.   Plaintiff's Ex. 4 (Hesch Affidavit), at 7, ¶¶ 22-25.  Defendant's interpretation of Attachment B is that it meant the parties "agreed that we would be co-owners of the Jetstream program, the technology, *and any patents or copyrights*" (emphasis added).  Ex. 18 at 2, ¶ 9.  However, as illustrated above, this language is derived from the language in the first bullet in Attachment B, describing intellectual property pertaining only to the "conceptual design of the digitizer."

Resorting to traditional rules of contract interpretation, I find that Attachment B does not contain language which evidences an intent by the parties to transfer any copyright to the Ziatek Jetstream software.  See, C.R. Anthony, 112 N.M. at 510 n.5 (1991) (resolution of an issue of contract interpretation solely by reference to such aids, or by traditional rules of grammar and punctuation, without resort to evidence of surrounding facts and circumstances, is considered issue of law).  The bullets are set out in a way that indicates a transfer of copyright or shared

5

copyright, but only with regard to the *digitizer* design.  The second bullet refers back to the heading which references only a "contribution" by Ziatek of the software.  Information regarding the software is contained in a separate bullet which does not mention ownership by both parties.  Thus, it does not constitute an "instrument of conveyance, or a note or memorandum of transfer" which is sufficient to memorialize a valid transfer of copyright to the software.

Attachment C fares no better as an instrument of conveyance of copyright ownership.  The phrase that Plaintiff "will furnish" does not describe an intent on the part of Plaintiff to transfer copyright ownership, as required under 17 U.S.C. § 204(a).  Further, prior to the formation of BVH Gregg, LLC, Hesch was sharing equally in the expenses as well as the profit for the manufacturing and sale of the Jetstream stealth units.  It would not have made sense for Hesch to be expected to give up the copyright as part of the deal in forming BVH Gregg, LLC, since he did not need to transfer the copyright in order to provide the expertise and the software program.  See, C.R. Anthony Co. v. Loretto Mall Partners, 112 N.M. at 510 n.5 (1991) (each part of contract is to be given significance according to its place in the contract so as to give effect to the intentions of the parties) (citations omitted); Schultz & Lindsay Constr. Co. v. State, 83 N.M. 534, 536 (1972) (The primary objective in construing a contract is to ascertain the intent of the parties).

**IV.   Conclusion**

From both the language of the document and the apparent intent of the parties, it seems to me that Hesch has met his burden on the preliminary injunction factors, including likelihood of success on the merits.  Plaintiff does not have an adequate remedy at law if the injunction is denied.  Defendant's recent bankruptcy filing, and the continued use of Plaintiff's software

6

without information of the extent of their end-use, presents a concern as to whether Plaintiff will be adequately reimbursed if relief is suspended until a trial on the merits. I also find that in balancing the harm between the parties, Plaintiff would suffer the harder blow, considering the wrongfulness of allowing continued infringement where ownership had not been transferred to Defendants, regardless of whether an alleged infringer may sustain more serious financial hardship. See, e.g., Autoskill Inc. v. National Educational Support Systems, Inc. 994 F.2d 1476, 1498-99 (10th Cir. 1993). Further, in copyright cases, an injunction is not adverse to the public interest. This factor normally weighs in favor of the issuance of an injunction because the public interest *is* the interest in upholding copyright protections. Id,, 994 F.2d at 1499.

Finally, because Plaintiff has established that the latter three factors "tip strongly" in his favor, the likelihood of success inquiry is modified somewhat. Plaintiff may establish likelihood of success "by showing that questions going to the merits are so serious, substantial, difficult, and doubtful as to make the issue ripe for litigation and deserving of more deliberate investigation." Valley Community vs. Mineta, 373 F.3d 1078, 1083 (10th Cir. 2004) (citation omitted). The foregoing discussion sets out the Court's findings regarding this factor, which Plaintiff has satisfied.

In sum, Plaintiff has shown that he did not transfer ownership of the copyright to the Ziatek Jetstream digitizing software, and has shown a likelihood on the merits of his copyright infringement claim. Therefore, I find that Plaintiff is entitled to injunctive relief concerning the Ziatek Jetstream digitizing software. However, the injunction will not issue until the Court has taken up and ruled on the matter of a security bond, under Fed.R.Civ.P. 65(c), which will be referred to the magistrate judge assigned to this case for a recommendation on the appropriateness of a security bond.

**THEREFORE,**

**IT IS ORDERED** that Plaintiff's Motion for Preliminary Injunction and/or for Permanent Injunction **(Doc. 9)** is granted with regard to Plaintiff's request for injunctive relief concerning the Ziatek Jetstream digitizing software;

**IT IS FURTHER ORDERED** that the injunction relating to the Ziatek Jetstream digitizing software shall not become effective until the Court rules on the appropriateness of a security bond.

_____
UNITED STATES DISTRICT JUDGE